UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAWRENCE RABIDOU, | Case No. 5:14-cv-03684-PSG |
| Plaintiff, | **ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE** |
| v. | |
| WACHOVIA CORPORATION F/K/A WORLD SAVINGS BANK, FSB; and WELLS FARGO BANK, NATIONAL ASSOCIATION, | (Re: Docket Nos. 28, 34) |
| Defendants. | |

On October 29, 2014, the court heard argument on Defendant Wells Fargo Bank Southwest N.A.'s[1] first motion to dismiss Plaintiff Lawrence Rabidou's initial complaint. On November 11, 2014, Rabidou amended his bankruptcy schedules to account for his district court claims for the first time.[2] On December 18, 2014, the court granted Wells Fargo's first motion to dismiss based on judicial estoppel.[3] Rabidou then filed a first amended complaint.[4]

---

[1] Formerly known as Wachovia Mortgage FSB, formerly known as World Savings Bank FSB (incorrectly sued as Wachovia Corporation f/k/a/ World Savings Bank, FSB and Wells Fargo Bank, National Association), as clarified by Wells Fargo in Docket No. 28 at 2.

[2] *See* Docket No. 27-9 at Exh. I.

[3] *See* Docket No. 26.

[4] *See* Docket No. 27.

1
Case No. 5:14-cv-03684-PSG
ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE

Rabidou's mid-November amendment does not change the fact that for over two and a half years, Rabidou knew of potential claims, misrepresented his status in bankruptcy court and benefited from this misrepresentation. Because Rabidou's claims remain barred by the doctrine of judicial estoppel, the court GRANTS Wells Fargo's motions to dismiss Rabidou's first amended complaint, to expunge and for attorney's fees.

**I.**

Judicial estoppel is an "equitable doctrine that precludes a party from gaining advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."[5] "[A] court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'"[6] "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases."[7]

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."[8] A debtor has a duty to file a schedule of assets and liabilities.[9] The debtor may

---

[5] *See Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (internal citations omitted).

[6] *See id.*

[7] *See id.* at 783 (internal citations omitted).

[8] *Id.* at 783.

[9] *See* 11 U.S.C. § 521(a)(1)(B)(i).

2
Case No. 5:14-cv-03684-PSG
ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE

amend the schedule as a matter of course at any time before the case is closed.[10] As such, "the Bankruptcy Code and Rules 'impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*,'"[11] or separate actions as assets,[12] that "continues for the duration of the bankruptcy proceeding."[13] "[J]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his [or her] schedules or disclosure statements to identify the cause of action as a contingent asset."[14] It is not necessary that a plaintiff know "all" facts giving rise to a particular claim.[15]

Rabidou owned fourteen houses.[16] On December 16, 2004, he entered into a consumer credit transaction with Wells Fargo involving a $608,000 mortgage loan.[17] A first trust deed on

---

[10] *See* Fed. R. Bankr. P. 1009(a).

[11] *See Hamilton*, 270 F.3d at 785 (emphasis in original) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)).

[12] *See Dzakula v. McHugh*, 746 F.3d 399, 400-01 (9th Cir. 2013) (holding that where "Plaintiff presented no evidence, by affidavit or otherwise, explaining her initial failure to include the action on her bankruptcy schedules," the district court "correctly assessed whether Plaintiff's omission was inadvertent or mistaken under the ordinary understanding of those terms.").

[13] *Hamilton*, 270 F.3d at 785.

[14] *Carr v. Beverly Health Care & Rehab. Servs., Inc.*, Case No. 12-cv-2980-EMC, 2013 WL 5946364, at *5 (N.D. Cal. Nov. 5, 2013); *accord Vertkin v. Wells Fargo Home Mortgage,* Case No. 10-00775-RS, 2010 WL 3619798, at *3 (N.D. Cal. 2010) (holding that a debtor has an obligation to amend her schedules or disclosure statements to identify a cause of action as a contingent asset).

[15] *See Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555, 557 (9th Cir. 1992) ("We recognize that *all* facts were not known to [Plaintiff] at that time, but enough was known to require notification of the existence of the asset to the bankruptcy court.") (emphasis in original); *Carr*, 2013 WL 5946364, at *5 (holding it is not necessary that the plaintiff understand that the facts "give rise to a cause of action.").

[16] *See* Docket No. 32 at 5.

[17] *See id.*

3
Case No. 5:14-cv-03684-PSG
ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE

Rabidou's principal residence secured the note.[18]  Over the next ten years, in the face of medical and financial difficulties, Rabidou lost thirteen houses, leaving him with only the residence.[19]  Rabidou ultimately defaulted on his mortgage loan, and in 2009 Wells Fargo commenced foreclosure proceedings.[20]  During foreclosure proceedings, Rabidou submitted multiple loan modification applications.[21]  Wells Fargo initially told Rabidou it would not foreclose, but then began foreclosure proceedings.  Wells Fargo later halted the foreclosure.[22]  In 2012, Rabidou filed for Chapter 13 bankruptcy, a proceeding that is still active.[23]  Since 2008, Rabidou has made no mortgage payments.[24]

In 2014, Rabidou filed suit in state court for improper denial of the loan modification applications.[25]  In that complaint, Rabidou alleges negligence, fraudulent concealment, negligent and fraudulent misrepresentation, fraudulent inducement, unfair business practices under the Business and Professions Code 17200 et seq., violation of § 15 U.S.C. 1641(g) and violation of Cal. Civ. Code § 2924.[26]  After removing the case to this court, Wells Fargo moved to dismiss each of Rabidou's claims based on judicial estoppel, the statute of limitations and failure to state a claim.[27]  Rabidou amended his bankruptcy schedule to add the claims as assets[28] just after the

---

[18] *See id.*

[19] *See id.*

[20] *See* Docket No. 28 at 2.

[21] *See* Docket No. 32 at 5.

[22] *See* Docket No. 27 at ¶ 64.

[23] *See* Docket No. 28 at 2.

[24] *See* Docket No. 27-8, Exh. H at ¶ 63.

[25] *See* Docket No. 15 at 4.

[26] *See* Docket No. 27.

[27] *See* Docket No. 10 at 3.

4
Case No. 5:14-cv-03684-PSG
ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE

court's hearing on Wells Fargo's first motion to dismiss, about a month before the court granted Wells Fargo's first motion to dismiss.[29] Rabidou then filed an amended complaint.[30] Wells Fargo now moves to dismiss this latest complaint, once again based on judicial estoppel, the statute of limitations and failure to state a claim.[31] Wells Fargo separately moves to expunge Rabidou's lis pendens.[32]

**II.**

This court has jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1367. The parties further consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[33]

Rabidou may be right that he has stated sufficient claims not barred by any statute of limitations. But the court cannot reach those issues because Rabidou is judicially estopped from raising such claims due to his failure to identify the claims on his bankruptcy schedule for over two and a half years.

**III.**

The Ninth Circuit has addressed the applicability of the equitable doctrine of judicial estoppel in the context of bankruptcy proceedings and has laid out three factors a court should consider in determining whether judicial estoppel applies.[34] A court must consider (1) whether a

---

[28] *See* Docket No. 28 at 3; Docket No. 29-1 at Exh. 12.

[29] *See* Docket Nos. 26, 27-9.

[30] *See* Docket No. 27.

[31] *See* Docket No. 28.

[32] *See* Docket No. 34.

[33] *See* Docket Nos. 6 and 9.

[34] *See Hamilton*, 270 F.3d at 782.

5
Case No. 5:14-cv-03684-PSG
ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE

party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled and (3) whether the party seeking to assert an inconsistent position would cause the opposing party unfair detriment if not estopped.[35]  Notwithstanding the factors enumerated above, the Ninth Circuit has noted that it does "not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel."[36]  "Additional considerations may inform the doctrine's application in specific factual contexts."[37]  Applying the *Hamilton* factors,[38] and bearing in mind the broader considerations of the doctrine, the court finds that judicial estoppel bars Rabidou's claims.[39]

---

[35] *See id.*

[36] *Id.* at 783.

[37] *See id.*

[38] *See id.* at 782.

[39] *Cf. Ah Quin v. County of Kauai Dept. of Transp.*, 733 F.3d 267, 272-75 (9th Cir. 2013) ("Along with most of our sister circuits, we have held that—at least where the plaintiff-debtor does not claim inadvertence or mistake—the reopening of a bankruptcy case is generally irrelevant to the analysis of judicial estoppel. . . . That is, even if a plaintiff-debtor corrects the initial mistake and no longer receives a benefit in bankruptcy court, judicial estoppel still applies—wiping out a potentially meritorious action. . . . Courts have provided three primary justifications for the rule. . . . First . . . full disclosure in bankruptcy is essential to the functioning of the bankruptcy system, a fact that 'cannot be overemphasized.' . . . Second, the initial disclosures failed to tell the creditors about the lawsuit. . . . Finally, and perhaps most importantly, courts have held that application of judicial estoppel is necessary in order to incentivize future debtors (and their lawyers) to provide full disclosure. . . . Here, Plaintiff voluntarily initiated the reopening.") (citing *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157 (10th Cir. 2007); *Barger v. City of Cartersville,* 348 F.3d 1289, 1297 (11th Cir. 2003); *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1288 (11th Cir.2002); *In re Coastal Plains, Inc.*, 179 F.3d at 206; *Hamilton,* 270 F.3d at 784 (holding that an initial "discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated"); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 418 (3d Cir. 1988) ("[The original bankruptcy plan] was informationally deficient, and not cured by the later modification. The original plan failed to alert the creditors to the possible financial benefits enuring to them upon the successful prosecution of the claim.")) (footnotes omitted).

6
Case No. 5:14-cv-03684-PSG
ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE

*First*, Rabidou took inconsistent positions.[40] He filed a Chapter 13 bankruptcy petition and initial schedules without disclosing any claims against Wells Fargo, and amended his schedules to include his claims only two and a half years later, just after the court's hearing on Wells Fargo's first motion to dismiss. Rabidou alleges "this omission was simply an inadvertent oversight based on the discovery of viable claims against Wells Fargo almost two years" after he filed for bankruptcy—not an attempt to defraud creditors.[41] Rabidou claims it was only when he convinced a Wells Fargo branch manager to let him see his file and compare notes with his denial letters—in May 2014—that he uncovered his claims.[42] Rabidou highlights that there have been no meetings between the creditors between May 2014 and November 2014, suggesting no creditors were harmed by his delay in rescheduling since his discovery.[43]

Though Rabidou asserts that he learned of viable claims only in May 2014, the misconduct he alleges spans from 2007 to 2012.[44] His allegations are those that a reasonable party would

---

[40] *See Vertkin*, 2010 WL 3619798, at *3 (N.D. Cal. 2010).

[41] *See* Docket No. 27 at ¶ 9.

[42] *See* Docket No. 32 at 8-9; Docket No. 27 at ¶¶ 9, 27, 28, 29, 83.

[43] *See* Docket No. 32 at 8-9.

[44] *See* Docket No. 27 at ¶ 33 ("Over a 7 year period that saw Plaintiff apply for a loan modification twelve different times, both of these Defendants independently breached a general duty of care they owed Plaintiff . . . ."); ¶ 43 ("Defendants' pattern of conduct over the seven year loan modification process has breached this duty owed to Plaintiff. Examples of this breach can be seen in the January 2009 improper loan modification denial, the sale that took place in June of 2011 while Wells Fargo was supposedly exploring foreclosure prevention alternatives, and the repeated requests for missing documents that were sent in over and over again."); ¶ 53 ("Due to Wachovia's deception, Plaintiff was harmed as he continued to believe that the loan modification process was being conducted in good faith. Over the next five years, Plaintiff submitted application after application, draining his savings, his retirement, and eventually renting out every single available room in his four bedroom house in order to get the help Wachovia and Wells Fargo promised that they would, at the very least, assist in providing."); ¶ 63 ("From January 2009 to February 2014, Defendants Wachovia and Wells Fargo made a series of false representations to Plaintiff during the loan modification process showing that neither Defendant ever intended to process his loan assistance applications accurately or in good faith."); ¶ 64 ("For example, on June 21, 2010, Plaintiff's home was sold at a foreclosure auction despite assurances from Wells Fargo V.P. Sharon

recognize as claims at the time they occurred: the bank's assertions of missing documents when Rabidou had sent the documents multiple times, for example, or the commencement of foreclosure after a promise to delay foreclosure proceedings.[45] To the extent that Rabidou's allegations are true, he possessed sufficient facts to know that a potential cause of action existed before filing his petition.[46] Rabidou's allegations of such obvious misconduct further contradict his claim of good faith, inadvertent oversight.[47]

*Second*, the bankruptcy court, the Trustee, and Rabidou's creditors relied on Rabidou's schedules that did not disclose Rabidou's claims against Wells Fargo.[48] Rabidou amended his bankruptcy schedules three times without disclosing any such claims, and only amended when the court prompted him to do so.[49] For over two and a half years, the Trustee and Rabidou's creditors relied on his misrepresented schedules in conducting meetings, submitting proofs of claim and

---

Zuniga that his home would not be sold while Wells Fargo looked for foreclosure prevention alternatives"); ¶ 70 ("However despite doing everything that was required to process his application, Wachovia nevertheless denied Plaintiff's application on January 3, 2011 due to not sending in the documents specified in the December 3, 2010 letter.").

[45] *See* Docket No. 32 at 2, 5, 22-21; Docket No. 27 at ¶ 21-24, 26-28, 33, 39-41, 43, 53, 63-65, 69-72.

[46] *See* Docket No. 27 at ¶ 21 (January 2009 review was denied for failure to submit required documentation when Rabidou in fact submitted the documentation); *id.* (Wells Fargo's January 2009 denial letter was "an obvious misrepresentation" of bank statements submitted three different times as proof of rental income); *id.* at ¶ 23, Exh. C (Wells Fargo's June 2010 improper near-sale of property despite promise to the contrary); *id.* at ¶ 24, Exh. D (Wells Fargo's November 2010 denial of modification for failure to provide proof of rental income when in fact Rabidou had sent in every requested document); *id.* at ¶26, Exh. F (Wells Fargo's October 2011 sending of conflicting letters regarding missing documents prior to denial of application); *id.* at ¶ 27, Exh. G (Wells Fargo's March 2012 third-party processor offer though documents never materialized and Rabidou was eventually denied).

[47] *See  Dzakula v. McHugh*, 746 F.3d at 401-02 (finding, when the plaintiff presented no evidence to explain her initial failure to include the action on her bankruptcy schedules, that "no reasonable fact-finder could conclude that the omission was inadvertent or mistaken.").

[48] *See Hamilton*, 270 F.3d at 784 (failure to list claims as assets on bankruptcy schedules, and then later suing on the same claims constituted inconsistent positions).

[49] *See* Docket No. 29, Exh. 8-10.

responding to Rabidou's proposed plans of reorganization.[50]  The Trustee, creditors, and bankruptcy court were clearly misled.  Rabidou "succeeded in persuading a court to accept [his] earlier position, so that judicial acceptance of an inconsistent position in a later proceeding . . . create[s] the perception that either the first or the second court was misled."[51]

*Third*, absent estoppel, Rabidou would derive an unfair benefit by proceeding with this case.  Rabidou has received the benefit of the automatic stay and protection from foreclosure without meeting his own obligation to the bankruptcy court or his creditors.[52]  Rabidou's late disclosure of his claims and this case to the Trustee and his creditors after the court heard Wells Fargo's motion to dismiss does not mitigate his failure to schedule his claims over two and a half years ago.  Since filing his original petition for Chapter 13 bankruptcy, Rabidou has filed four proposed plans of reorganization.  Rabidou's Trustee and creditors have filed seven objections to Rabidou's proposals.  The Trustee eventually filed a motion to dismiss for failure to make plan payments—which she withdrew one day after Rabidou filed his amended Schedule B disclosing his claim.  Showing unfair reliance and inefficient use of the courts' resources, absent intervention, the Trustee likely would have to investigate Rabidou's new claims and their value, and conduct another Section 341 meeting.  In the meantime, Rabidou would continue to benefit from the protections of bankruptcy.  "The offending litigants, not courts, should be made to bear the

---

[50] 11 U.S.C. § 341(b); Docket No. 29-1 at Exh. 11.  Notably, at the October 15, 2012 meeting under Section 341 of the bankruptcy code, the Trustee and Rabidou's creditors verified his assets and financial picture, relying on incomplete schedules.  Neither his creditors nor the trustee were able to question Rabidou regarding the value of his potential claims or their veracity.  The Trustee closed the meeting unaware of these unknown claims.

[51] *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Hamilton*, 270 F.3d at 784.

[52] *See New Hampshire*, 532 U.S. at 751.

9
Case No. 5:14-cv-03684-PSG
ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE

consequence of non-disclosure. It is the court system, after all, that judicial estoppel aims to protect."[53]

On balance, Rabidou's allegations show he had "knowledge of enough facts to know that a potential cause of action" existed at the outset of his bankruptcy, when he filed his amended schedules, and when he met with his creditors.[54] Given the evidence presented, Rabidou's failure to disclose his claims could not have been inadvertent or a mistake, and indeed misled the bankruptcy court which protected him for over two and a half years. Wells Fargo's motion to dismiss each of Rabidou's claims as a matter of judicial estoppel is GRANTED. Because any further amendment would be futile, this dismissal is without further leave to amend.[55]

**IV.**

Wells Fargo also moves to expunge the notice of pendency of action recorded by Rabidou against his property, and requests attorneys' fees against Rabidou under Cal. Code of Civ. P. § 405.38.[56] Rabidou concedes he does not state claims viable to support his lis pendens, which clouded the property title and delayed its sale,[57] and agrees the notice of pendency of action should be expunged.[58] However, Rabidou objects to Wells Fargo's request for attorney's fees and costs.[59]

---

[53] *Dzakula v. McHugh*, Case No. 10-cv-05462-PSG, 2011 WL 1807241, at *2 (N.D. Cal. Apr. 22, 2011) *aff'd*, 737 F.3d 633 (9th Cir. 2013) *opinion amended and superseded*, 746 F.3d 399 (9th Cir. 2014) and *aff'd*, 746 F.3d 399 (9th Cir. 2014).

[54] *Carr*, 2013 WL 5946364, at *5; accord *Vertkin,* 2010 WL 3619798, at *3; *Hay,* 978 F.2d at 557.

[55] *Cf. Sharp v. Nationstar Mortgage, LLC*, Case No. 14-cv-00831-LHK, 2015 WL 106844, at *4 (N.D. Cal. Jan. 7, 2015); *Swendsen v. Ocwen Loan Servicing, LLC,* Case No. 2:13-cv-02082-TLN, 2014 WL 1155794, at *6 (E.D. Cal. Mar. 21, 2014); *Kaur v. Citibank, N.A.*, Case No. 1:13-cv-01610-, 2014 WL 3756136-AWI, at *10 (E.D. Cal. July 30, 2014); *Bernardi v. Deutsche Bank Nat. Trust Co. Am.*, Case No. 11-cv-05453-RMW, 2013 WL 163285, at *3 (N.D. Cal. Jan. 15, 2013); *Hamilton*, 270 F.3d at 785; *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir. 1993); *Oneida Motor Freight*, 848 F.2d at 416.

[56] *See* Docket No. 34.

[57] *BGJ Assocs. v. Superior Court*, 75 Cal. App. 4th 952, 967 (1999) ("Once a lis pendens is filed, it clouds the title and effectively prevents the property's transfer until the litigation is resolved or the lis pendens is expunged.").

Section 405 and its predecessor statutes were enacted to mitigate and correct abuses prevalent in the use of notices of pendency of action.[60] To maintain a lis pendens, a plaintiff must affirmatively come forth with evidence that proves a "probable validity" of a "real property claim."[61] If a plaintiff cannot do so, his lis pendens must be expunged.[62] The "probable validity" standard in the lis pendens statute is analogous to the "likelihood of success" standard in determining whether to issue a preliminary injunction.[63] Further, a "real property claim" is limited to a cause of action which, if meritorious, would affect title to, or the right to possession of, specific real property.[64] "[A]n action for money only, even if it relates in some way to specific real property, will not support a lis pendens."[65]

Section 405.38 specifically provides that a "court shall direct that the party prevailing on any motion under this chapter be awarded the reasonable attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or

---

[58] *See* Docket No. 38.

[59] *See id.* at 1.

[60] *Malcolm v. Superior Court,* 29 Cal. 3d 518, 524 (1981); *see also Shah v. McMahon*, 148 Cal. 4th 526, 529 (2007) (expungement procedure "provides a means by which a court may dispose of meritless real estate claims at the preliminary stage of a case").

[61] Cal. Code of Civ. P. §§ 405.30, 405.32.

[62] *Id.*; *see also Adams v. SCME Mortgage Bankers, Inc.*, Case No. 09-cv-0501-LJO, 2009 WL 1451715, at *13 (E.D. Cal. May 22, 2009) ("Expungement of a lis pendens is mandatory where the 'probable validity' of the underlying claim has not been established").)

[63] *Howard S. Wright Construction Co. v. Superior Court*, 106 Cal. App. 4th 314, 646-47 (2003); accord *Amalgamated Bank v. Superior Court,* 149 Cal. App. 4th 1003, 1012 (2007) (discussing Code of Civil Procedure § 405.32 and its history, "a claimant must . . . make a showing that he is likely to prevail on the merits, in much the same fashion as one seeking an attachment must show the probable merit of the underlying lawsuit.").

[64] Cal. Code Civ. P. § 405.4.

[65] *BGJ Associates*, 75 Cal. App. 4th at 967 (citations omitted).

11
Case No. 5:14-cv-03684-PSG
ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE

that other circumstances make the imposition of attorney's fees and costs unjust."[66] An award of attorneys' fees is mandatory unless, upon filing the lis pendens, the plaintiff had a good-faith basis in fact and law for believing he could satisfy all requirements for filing it.[67] The burden is on the party opposing the motion to expunge.[68]

Rabidou's first amended complaint claims are for damages, not real property.[69] In addition, because Rabidou's claims are judicially estopped, his lis pendens is invalid in any case.

In determining attorney's fees, Rabidou argues the court should focus on his original complaint, to which the lis pendens action tied. There, at least some claims are tied to the California's Homeowner's Bill of Rights and the act of filing a notice of default, initiating foreclosure proceedings under Cal. Civ. Code Section 2924 (a)(1). But Rabidou does not seek injunctive relief in connection with his negligence or unfair competition law claims, and the Homeowner's Bill of Rights sections at issue, Cal. Civ. Code Sections 2924.17 and 2924(a)(6), were not operable in 2009.[70]

Rabidou also argues that it would be unjust to award attorney's fees, because Rabidou attempted to stipulate with Wells Fargo to remove the lis pendens action, Rabidou has spared Wells Fargo additional cost by not opposing Wells Fargo in this action and Rabidou faces impending

---

[66] *See* Cal. Code of Civ. P. § 405.38.

[67] *See id.*

[68] See Cal. Code Civ. P. § 405.30.

[69] *See BGJ Associates,* 75 Cal. App. 4th at 967 ("An action for money only, even if it relates in some way to specific real property, will not support a lis pendens.") (citations omitted); Cal. Code Civ. P. §§ 405.30, 405.32.

[70] See e.g. *McGough v. Wells Fargo Bank, N.A.*, Case No. 12-cv-0050-TEH, 2012 WL 5199411, at *5 (N.D. Cal. Oct. 22, 2012); *Hartford Life & Annuity Ins. Co. v. Doris Barnes*, Case No. 10-cv-7560-PSG 2012 WL 688817, at *5 (C.D. Cal. Feb. 3, 2012).

foreclosure and other financial difficulties.[71]  But Rabidou has not met his burden to show that he had a good faith basis to record the lis pendens, and he has acted too late.  Rabidou filed his lis pendens over six months ago and has yet to withdraw it.  Even if Rabidou's initial complaint showed a good faith basis for the lis pendens, Rabidou filed an amended complaint over three months ago, and again he never withdrew the lis pendens—Wells Fargo filed its motion to expunge the lis pendens over a month after Rabidou's amended complaint.  Only then did Rabidou offer to withdraw the lis pendens, but Rabidou did not offer to pay Wells Fargo's attorney's fees associated with its motion.  Wells Fargo's short reply brief does not show any abuse of resources in anticipation of an attorney's fees award.  Wells Fargo's motion to expunge and for attorney's fees in the amount of $3,240[72] therefore is GRANTED.

## V.

Both of Wells Fargo's motions are GRANTED.  The Clerk shall close the file.

**SO ORDERED.**

Dated: April 8, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[71] *O'Connor v. Sabadell United Bank, N.A.*, Case No. 14-cv-00180-JCS, 2014 WL 3845224 at *2 (N.D. Cal. Aug. 5, 2014).

[72] *See* Docket No. 36 at 2.  Wells Fargo made no further declarations pertaining to attorney's fees following their opening brief on the motion to expunge.

13
Case No. 5:14-cv-03684-PSG
ORDER GRANTING MOTIONS TO DISMISS AND TO EXPUNGE